***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employee/employer relationship existed at the time of the alleged incident.
 2. Defendant was self-insured at the time of the alleged incident. *Page 2 
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged incident. Defendant employed the requisite number of employees to be bound under the provisions of said Act.
4. The date of the alleged injury is February 12, 2004.
5. The issues to be determined are as follows:
 a. Whether plaintiff suffered a compensable injury by accident or compensable occupational disease in the course of employment as defined by the Workers' Compensation Act;
 b. Whether plaintiff is entitled to temporary total benefits and/or permanent partial benefits; and
 c. Whether plaintiff is entitled to reimbursement for past and future medical expenses.
6. The documents entered into evidence include the following:
 • Stipulated Exhibit #1 — Industrial Commission forms; plaintiff's medical records; plaintiff's employment records and job description; and discovery.
 *********** EVIDENTIARY RULING
Prior to the hearing before the Full Commission, plaintiff filed a Motion to Receive Further Evidence. The additional evidence consisted of a letter authored by defendant's witness physician, Dr. George S. Edwards, Jr. Defendants filed a written objection to the Motion and the Full Commission deferred ruling on the Motion until hearing. The Full Commission grants *Page 3 
plaintiff's Motion to Receive Further Evidence and the October 6, 2005 letter of Dr. Edwards is made a part of the Record.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 42-year old high school graduate who had worked for defendant since 2000. Prior to working for defendant, plaintiff was employed as a manager with Glaxo Wellcome in the Research Triangle Park from 1991 to 2000 where her job duties included creating schedules and supervising other employees.
2. When plaintiff began working for defendant in 2000 as a housekeeper, her job consisted of cleaning offices and bathrooms, dusting desks, vacuuming and mopping.
3. Plaintiff was promoted to supervisor in 2001 and worked in that capacity for eight months until she voluntarily resumed her job as a housekeeper.
4. Plaintiff was again promoted in November 2003 to the position of utility worker. Plaintiff's position as a utility worker had different job requirements than those of a housekeeper in that it involved more use of her hands. Furthermore, she was required to use a rotary floor polisher/stripper and a propane burnisher on a weekly basis.
5. The use of the rotary machine and propane burnisher involved a vibratory component and plaintiff testified that each machine weighed approximately between fifty and seventy-five pounds.
6. Based on a job analysis form that the parties stipulated into evidence, plaintiff's job as a utility worker required her to sweep, dust mop, mop and remove trash from the third *Page 4 
floor of the Levine Science Research Center building. In addition, plaintiff was required to: 1) operate the propane burnisher to polish floors once a week for approximately two to three hours per shift; 2) operate the rotary machine to scrub shower floors approximately three times per week; and 3) operate the rotary machine to strip and wax floors approximately two times each month. The use of a rotary machine and a propane burnisher are not activities engaged in regularly by the general population.
7. Plaintiff testified that she began to experience pain and discomfort in her hands during the early part of January 2004, approximately two months after beginning her position as a utility worker.
8. On February 12, 2004, plaintiff attempted to move the propane burnisher by pushing down on its handle to maneuver it onto its wheels. Plaintiff testified that as she pushed down on the machine, the handle became loose, causing the burnisher to tip over. As plaintiff caught the burnisher to keep it from falling, she began to experience an increase in pain and numbness in her right hand.
9. Plaintiff subsequently presented to Dr. Smith at Duke University Employee Health who gave plaintiff medication and a splint for her hand and referred her to Dr. David Stanley, an orthopedic surgeon.
10. In Dr. Smith's written referral to Dr. Stanley, he noted that plaintiff was experiencing a burning sensation in the fingers of her right hand, from her second to fifth digits as well as difficulty moving her fingers, and tenderness in her fingers when touched.
11. Plaintiff presented to Dr. Stanley on February 24, 2004, complaining of pain and numbness in her hand that had persisted for several months. She informed Dr. Stanley that the pain in her right hand worsened when she waxed and stripped floors. *Page 5 
12. During plaintiff's visit with Dr. Stanley, she registered a positive Phalen's test, indicating carpal tunnel syndrome. After subsequent x-rays and an EMG nerve conduction study, Dr. Stanley concluded that plaintiff suffered from moderately severe carpal tunnel syndrome of the right hand.
13. Dr. Stanley again saw plaintiff on March 9, 2004, and noted that her symptoms had not improved since her last visit. After discussing treatment options, Dr. Stanley scheduled plaintiff for a surgical release on April 5, 2004 to treat plaintiff's carpal tunnel syndrome. On March 24, 2004, Dr. Stanley wrote a note on March 24, 2004, releasing plaintiff from work because of the pain in her right hand. The note provided that plaintiff was not to work prior to the surgical procedure and for a period of time postoperatively. The surgery was performed as scheduled and, according to Dr. Stanley, confirmed carpal tunnel syndrome in plaintiff's right hand.
14. Dr. Stanley opined and the Full Commission finds that the surgery was the most definitive and prudent option to deal with plaintiff's carpal tunnel syndrome, and the purpose of plaintiff's surgery was to prevent any worsening of her condition and to improve her symptoms.
15. Plaintiff returned to Dr. Stanley on May 18, 2004 for an assessment of the surgery. At the time, plaintiff did not notice any difference in the numbness and tingling in her hand. Dr. Stanley instructed plaintiff to perform hand-stretching exercises to manage the pain.
16. Plaintiff was unable to earn any wages from March 24, 2004 to July 6, 2004, when she returned to restricted work for defendant.
17. Dr. Stanley issued work restrictions that plaintiff not use the rotary buffer or propane burnisher for two weeks. Upon returning to work on July 6, 2004, plaintiff was placed on work restrictions that required her to work a shift from five to one-thirty instead of her normal *Page 6 
shift from three to eleven-thirty. As a result, plaintiff was unable to earn her shift premiums, resulting in an $85 per week loss in pay.
18. After two weeks of working with restrictions, plaintiff returned to regular work duty and, at the time of the hearing before the Deputy Commissioner was still employed with defendant.
19. Dr. Stanley opined to a reasonable degree of medical certainty, and the Full Commission finds that plaintiff's work with defendant, specifically her job duties as a utility worker, caused or significantly contributed to the development of the occupational disease of carpal tunnel syndrome and that because of her job duties, plaintiff has a higher risk of developing or worsening carpal syndrome than the general public.
20. Dr. George Edwards, Jr., an orthopedist, performed a medical records and job description review of the plaintiff and concluded that her job duties with defendant did not cause her carpal tunnel syndrome. The Full Commission assigns greater weight to Dr. Stanley's opinions, as he actually treated plaintiff, performed her surgery and was more familiar with her medical and work history.
21. At the time of the hearing before the Deputy Commissioner, plaintiff was still complaining of burning pain and numbness in her right hand, but she testified that she was unable to stop working for financial reasons.
22. Subsequent to her injury, plaintiff was required to pay for medical expenses that were a direct and natural consequence of her injury. These expenses include, but are not limited to, approximately six visits with Dr. Stanley for pain management and plaintiff's surgery performed on April 5, 2004. The Full Commission finds that these expenses were necessary to effect a cure and provide relief of the pain associated with plaintiff's carpal tunnel syndrome. *Page 7 
23. As plaintiff is still suffering from pain as a result of her carpal tunnel syndrome, she is entitled to further medical compensation from defendant for any future medical expenses that tend to effect a cure or give relief from her condition. This includes treatment for pain, as well as expenses for the monitoring and observation of her carpal tunnel syndrome.
24. Plaintiff testified that she has not seen Dr. Stanley since returning to work because she could not afford the $35 co-payments. However, she has visited employee health at Duke several times in order to receive treatment for the pain.
25. In his deposition testimony, Dr. Stanley opined that plaintiff's job duties should be changed to accommodate her physical capabilities.
26. The Full Commission finds that a vocational assessment would be helpful in determining whether plaintiff's current job duties are suitable and if not, what duties would be suitable, considering any physical limitations.
27. Based on the Form 22 in evidence, plaintiff was earning an average weekly wage of $455.21, yielding a compensation rate of $303.48.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Compensation under the Workers' Compensation Act may be awarded for an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13) if two conditions are met: (1) the disease must be "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment"; and (2) the disease cannot be an "ordinary disease of life to which the general public is equally exposed outside of the *Page 8 
employment." Booker v. Medical Center, 297 N.C. 458, 468;256 S.E. 2d 189, 196 (1979). The claimant bears the burden of proving the existence of an occupational disease. Gay v. J.P. Stevens Co.,79 N.C. App. 324, 331, 339 S.E. 2d 490, 494 (1986). In the present case, plaintiff has carried the burden of proof to establish that her employment as a utility worker for defendant caused or significantly contributed to the development of the occupational disease of carpal tunnel syndrome and that her employment with defendant placed her at an increased risk of developing this condition compared to the general public. N.C. Gen. Stat. § 97-53(13).
2. As a direct and proximate result of plaintiff's compensable occupational disease of carpal tunnel syndrome, plaintiff was unable to earn any wages from March 24, 2004 until July 6, 2004, and thus is entitled to temporary total disability compensation at the rate of $303.48 per week for this period. N.C. Gen. Stat. §§ 97-2(9); 97-29.
3. As a direct and proximate result of plaintiff's compensable occupational disease of carpal tunnel syndrome, plaintiff was unable to earn the same or greater wages as she was earning before she became disabled from July 6, 2004 up until the time she was able to return to her regular wages. Therefore, she is entitled to temporary partial disability compensation in an amount equal to 66 2/3% of the difference between her average weekly wage of $455.21 and the amount she earned after July 6, 2005 until such time when her average weekly wage was restored to that which she was earning prior to her injury. The parties shall determine said date via the defendant-employer's company records. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to have defendant provide such medical care and treatment as is reasonably required to provide relief, effect a cure or lessen plaintiff's period of disability caused by her compensable occupational disease, including but not limited to, a vocational rehabilitation assessment to determine whether plaintiff's current job is suitable employment. N.C. Gen. *Page 9 
Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved herein, defendant shall pay to plaintiff temporary total disability compensation from March 24, 2004 until July 6, 2004, in the amount of $303.48 per week. Since this amount has accrued, it shall be paid in a lump sum, also subject to an attorney's fee.
2. Subject to attorney's fees approved herein, defendant shall pay temporary partial disability compensation to plaintiff in an amount equal to 66 2/3% of the difference between her average weekly wage of $455.21 and the average weekly wage she was earning after July 6, 2004, to be paid to cover the time period after July 6, 2004 until such time when her average weekly wage was restored to that which she was earning prior to her injury. The parties shall determine said date via the defendant-employer's company records. Since this amount has accrued, it shall be paid in a lump sum, also subject to an attorney's fee.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff for treatment of her occupational disease of carpal tunnel syndrome for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability, including but not limited to, a vocational rehabilitation assessment to determine whether plaintiff's current job is suitable employment.
4. A reasonable attorney's fee in the amount of twenty-five (25%) percent of the accrued benefits due under Paragraphs 1 and 2 of this Award is hereby approved for plaintiff's *Page 10 
counsel, which shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel.
5. Defendant shall bear the costs.
This the __ day of July 2007.
S/___________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1